UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CASSANDRA WALSH,<br><br>                    Plaintiff,<br><br>       v.<br><br>WALMART INC.,<br><br>                    Defendant. | CASE NO. 2:22-cv-01313-LK<br><br>ORDER DENYING MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS |

This matter comes before the Court on Plaintiff Cassandra Walsh's Motion for Protective Order and to Quash Defendant's Subpoenas Duces Tecum in this Title VII and WLAD case. Dkt. No. 16. Walsh seeks to quash Walmart's subpoenas that seek documents from her pre-Walmart employer (Silver Lake Dental – erroneously identified by Walmart as Silver Lake Dental Arts), her current employer (Highline Public School District), and her current student teaching practicum host district (Everett Public School District). For the reasons set forth below, the Court denies the motion.[1]

---

[1] Because the Court can decide the matter based on the parties' filings, it denies Walsh's request for oral argument.

ORDER DENYING MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS - 1

I.  BACKGROUND

In April 2020, Walsh began working for Walmart as an assistant store manager in Arlington, Washington. Dkt. No. 1 at 1–2. Walsh alleges that soon after she was hired, the store manager began to sexually harass her on a daily basis. *Id.* at 2–3. Her complaints were ignored, and eventually, she was forced to resign in January 2021 because of the continuous harassment. *Id.* at 3–6.

Walsh filed this action on September 16, 2022. Dkt. No. 1. She brings claims against Walmart under federal and state law for sexual harassment, retaliation, and sex discrimination. *Id.* at 7–9.

On November 8, 2022, Walmart served its first set of interrogatories and requests for production, seeking information regarding Walsh's claims, background, employment history, and mitigation efforts. Dkt. No. 19 at 1. According to Walsh's responses, Highline Public School District has been her only employer since her employment at Walmart ended. Dkt. No. 26-1 at 13–14. She was hired by the Highline School District on October 13, 2022 as a substitute teacher and "ha[d] not yet earned income from this employment" at the time she submitted her responses. *Id.* at 13. As part of her educational program, Walsh was placed with a teacher in the Everett Public School District to complete student teaching, which is not paid employment. *Id.* at 75. Counsel held a discovery conference in January 2023 to address alleged deficiencies with some of Walsh's responses, and Walsh supplemented her responses on February 10, 2023. Dkt. No. 19 at 2; *see also* Dkt. No. 26-1 at 2–20.

After reviewing the supplemental responses, Walmart became concerned that Walsh had made a number of misrepresentations in her job applications and resumes. Specifically, Walmart noticed inconsistencies between Walsh's employment history when she applied for her position at Walmart and a subsequent application for a position at The Boeing Company that she submitted

in 2021. Dkt. No. 19 at 3. In her application to Walmart, Walsh listed her title as "General Manager" at "Silver Lake Dental" from August 2001 through October 2019. Dkt. No. 26-1 at 25. According to her application, her job responsibilities at Silver Lake Dental included running the front desk, hiring and training employees, and managing workload schedules. *Id.*

Walsh's application to Boeing, however, listed her title as "Sr. Human Resources Director" at Silver Lake Dental or "Silverlake medical & Dental arts." *Id.* at 28.[2] Walsh described her responsibilities to include support for multiple locations and departments with "6 direct reports and 32 indirect reports." *Id.* at 28. Despite claiming in this case that she was unemployed after leaving Walmart until she started substitute teaching for the Highline Public School District in October 2022, Walsh's Boeing application indicated that she was still employed by Silver Lake Dental. *See id.* (indicating that she worked at Silver Lake Dental from June 2001 to present).[3] Walsh declares that she noticed an inaccuracy regarding the duration of her employment at Silver Lake Dental when she reviewed her application for the position at Boeing. Dkt. No. 22 at 2.

Walmart also observed inconsistencies among multiple versions of Walsh's resume in how she identified her prior employer. One of her resumes indicated that she worked at "Silver Lake Orthodontics" from March 2013 through April 2019, Dkt. No. 26-1 at 32, while another version indicated that she worked at "Oliver Orthodontics" in Silver Lake, Washington from March 2013 through March 2019, *id.* at 35. In addition, in her resume to Walmart, Walsh stated that she attended Yale University, but in her other applications, she indicated that she attended Capella University. *Id.* at 28, 31, 35, 118.

---

[2] One of the resumes she produced in discovery listed her title at the dental office as "Human Resources Office Operations Manager." *Id.* at 32; Dkt. No. 26 at 3. Yet another resume identifies the title as "Human Resources Office Manager." Dkt. No. 26-1 at 35.

[3] Although her application to Boeing stated that she worked at Silver Lake Dental from June 2001 to the present, Dkt. No. 26-1 at 28, and her application to Walmart stated that she worked there from August 2001 through October 2019, *id.* at 25, both of her resumes listed her employment at the dental office from 2013 to 2019, *id.* at 32, 35.

ORDER DENYING MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS - 3

Because of the inconsistencies and "the limited and questionable responses from [Walsh]," Walmart "determined the only way to discern the unbiased truth of [Walsh]'s employment is to seek such records directly from the entities themselves." Dkt. No. 19 at 4. Walmart provided notice to Walsh on February 17, 2023 that it intended to serve subpoenas on her former employer and the two school districts. *Id.* Walsh objected, counsel conferred on February 23, 2023, Walmart agreed to narrow the scope of the subpoenas, and Walmart sent revised subpoenas to Walsh the next day. *Id.* at 4–5. The parties then discussed the revised subpoenas by email, and when they could not agree, Walmart served them on March 1, 2023. *Id.* at 5–6; Dkt. No. 26-1 at 85–102. From Silver Lake, Walmart requested the following documents about Walsh:

- Applications for employment/job positions
- Resumes
- Certifications/Degrees
- Disciplinary Records
- Termination records or exit interview documentation describing reasons for separation
- Documents showing Position Held at Separation

Dkt. No. 26-1 at 89. From the Highline and Everett Public School Districts, Walmart requested the following documents about Walsh:

- Applications for employment/job positions
- Resumes
- Certifications/Degrees
- Work Schedules
- Payroll, benefits, and compensation information

*Id.* at 95, 101. Walsh then sent a letter to all three entities asking them not respond to the subpoenas until after the Court ruled on this motion. Dkt. No. 19 at 6; Dkt. No. 26-1 at 104–06.

Nevertheless, on March 8, 2023, Walmart received a response from Silver Lake Dental Arts stating that the business did not have any records regarding Walsh because she was never employed there. Dkt. No. 26-1 at 114–15. Walsh was not surprised by this response because she

ORDER DENYING MOTION FOR PROTECTIVE ORDER AND TO QUASH SUBPOENAS - 4

worked at a business named Silver Lake Dental from approximately 2013 to 2019, not Silver Lake Dental Arts, and declares that the business changed its name during and after her employment. Dkt. No. 22 at 1. Indeed, the resumes Walsh produced in discovery refer to the business as "Silver Lake Orthodontics," Dkt. No. 26-1 at 32, and "Oliver Orthodontics" in Silver Lake, Washington, *id.* at 35. Adding to the confusion, Walsh's application to Boeing refers to the business as "Silver Lake Dental" and "Silverlake medical & Dental arts." *Id.* at 28.

## II.  DISCUSSION

Walsh moves for a protective order and asks the Court to quash the subpoenas. Dkt. No. 16. She argues that the subpoenas are a "poorly veiled attempt to intimidate and bully" her and do not seek relevant information. *Id.* at 1–2. Walmart counters that the subpoenas are relevant to Walsh's duty to mitigate her alleged economic damages and her credibility, and constitute after-acquired evidence. Dkt. No. 18 at 10–13.

The Court has jurisdiction over this matter under 28 U.S.C. § 1331 because Walsh asserts a claim under Title VII, 42 U.S.C. § 2000e *et seq*. Dkt. No. 1 at 7.

### A.  The Parties' Meet and Confer

A party seeking a protective order must include, with the motion, "a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1); *see also* LCR 26(c)(1). A proper meet and confer "requires a face-to-face meeting or a telephone conference." LCR 26(c)(1); LCR 1(c)(6).

In this case, the parties held Rule 26 conferences on January 23 (regarding the discovery responses) and February 23, 2023 (regarding the subpoenas). Dkt. No. 19 at 2, 4. But their efforts suffer from two deficiencies. First, they do not appear to have discussed the matter to impasse because they did not talk again after Walmart agreed to narrow the subpoenas, only exchanging

their positions about the revised subpoenas by email. *Id.* at 6; *see also Brantigan v. Depuy Spine, Inc.*, No. C08-0177-RSL, 2008 WL 4279405, at *1 (W.D. Wash. Sept. 12, 2008) (explaining that the parties "must meet and confer to an impasse after all documents and supplemental responses have been exchanged" and holding that the meet and confer requirement was not satisfied when defendant filed a motion to compel without conferring about supplemental responses). And second, their filings reveal a key misunderstanding regarding the name of Walsh's former employer. Dkt. No. 20 at 2 (chiding Walmart for serving a subpoena on "Silver Lake Dental Arts" even though Walsh never worked for that entity). Despite their conversations, and Walsh's receipt of two proposed subpoenas to "Silver Lake Dental Arts" before they were served, her counsel did not clarify the name of her prior employer and instead allowed Walmart to subpoena the wrong entity. Dkt. No. 26-1 at 38–45 (February 17, 2023 notice of intent to serve subpoena on "Silver Lake Dental Arts" and proposed subpoena to that entity); *Id.* at 61–66, 70 (February 24, 2023 notice and subpoena to the same entity): Dkt. No. 19 at 4–5.

On both fronts, the parties did not comply with the letter or spirit of the meet and confer requirement. However, requiring them to confer again now would further delay Walmart's discovery efforts and is unnecessary because the parties' briefing addresses the issues. Therefore, the Court addresses the substance of the motion but first reminds counsel that in discovery, "[c]ounsel should strive to be cooperative, practical and sensible, and should seek judicial intervention 'only in extraordinary situations that implicate truly significant interests.'" *Neal v. City of Bainbridge Island*, No. 3:20-cv-06025-DGE, 2023 WL 2214245, at *2 (W.D. Wash. Feb. 24, 2023) (quoting *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 331 (N.D. Cal. 1985)); *see also* LCR 1(c)(6) ("The court expects a high degree of professionalism and collegiality among counsel during any meet and confer conference."). It does not appear that counsel has lived up to those obligations in this case, and the Court expects them to do so in the future.

**B.     The Request for a Protective Order**

      1.   <u>Applicable Standards</u>

"A party's right to obtain material pursuant to a Rule 45 subpoena to a third party is as broad as otherwise permitted under the discovery rules." *Abu v. Piramco Sea-Tac Inc.*, No. C08-1167-RSL, 2009 WL 279036, at *1 (W.D. Wash. Feb. 5, 2009). Pursuant to Federal Rule of Civil Procedure 26(b)(1), each party is entitled to discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."

District courts have discretion to limit discovery "for good cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). And the Court may limit discovery when the discovery at issue "can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i). "The party seeking to limit discovery has the burden of proving 'good cause,' which requires a showing 'that specific prejudice or harm will result' if the protective order is not granted." *Schreib v. Am. Fam. Mut. Ins. Co.*, 304 F.R.D. 282, 284–85 (W.D. Wash. 2014) (quoting *In re Roman Cath. Archbishop of Portland*, 661 F.3d 417, 424 (9th Cir. 2011)). The party must also "present a factual showing of a particular and specific need for the protective order." *Pulphus v. Compass Health*, No. 2:21-cv-00930-TL-BAT, 2022 WL 474081, at *3 (W.D. Wash. Feb. 16, 2022) (quoting *Welsh v. City and Cnty. of San Francisco*, 887 F. Supp. 1293, 1297 (N.D. Cal. 1995)); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (holding that "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." (internal quotations omitted) (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)). Under the liberal discovery principles of the Federal Rules, the party seeking a protective order must "carry a heavy burden of showing why discovery" should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

"[C]ourts in this district generally find that 'employment records from separate employers are not discoverable due to their highly private nature absent a specific showing by a defendant as to their relevance.'" *Bolding v. Banner Bank*, No. C17-0601-RSL, 2020 WL 3605593, at *2 (W.D. Wash. July 2, 2020) (quoting *Scott v. Multicare Health Sys.*, No. C18-0063-JCC, 2019 WL 1559211, at *2 (W.D. Wash. Apr. 10, 2019)). And courts have also recognized that "notifying a current employer of the filing of a claim can be considered retaliatory because it would chill employees' willingness to pursue statutory claims and remedies for fear of adversely impacting future employment opportunities." *Id.* Therefore, obtaining plaintiff's records from other employers will "be permitted only if defendant's showing of relevance outweighs the potential prejudice" to the plaintiff. *Id.*

    2.  <u>The Subpoena to Silver Lake Dental Arts</u>

As set forth above, there is some confusion regarding the name(s) of Walsh's prior dental employer, but regardless, Walsh argues that a protective order is appropriate because Walmart's subpoena to that entity is an impermissible fishing expedition. Dkt. No. 16 at 8–11. Walsh does not contend, however, that she will suffer any particular harm if her prior employer produces the requested records. Rather, Walsh contends that the requested records are not relevant to her claims or Walmart's defenses. *Id.*

Walmart argues that records from Walsh's former employer are relevant and necessary to assess her credibility, i.e., whether she was truthful in her employment applications, and are also relevant to her future employment prospects. Dkt. No. 18 at 12.

Although the admissibility of character evidence is limited, discoverable evidence need not be admissible at trial. *See* Fed. R. Evid. 404(a); Fed. R. Civ. P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable."); *see also Awosika v. Target Corp.*, No. C11-0185-RSM, 2011 WL 13048452, at *3 (W.D. Wash. May 26, 2011)

("[E]ven if evidence is inadmissible under [Federal Rule of Evidence] 404(a), it may still be used to impeach a witness on cross-examination under Rule 608(b)."). Discovery has revealed that Walsh has inconsistently identified her former title, job description, and period of employment in her job applications and resumes. Dkt. No. 19 at 3–4. And she has inconsistently represented her educational background to various employers. *Id.* at 3. These significant discrepancies have given Walmart reason to believe the Walsh was not truthful about her employment background—something that has bearing on not only her credibility, but her future employability. Dkt. No. 18 at 10, 12; *see also, e.g.*, *Davis v. Kelly Servs., Inc.*, No. CV 17-1699-GW (PLAX), 2017 WL 11633478, at *7–8 (C.D. Cal. Oct. 23, 2017) ("plaintiff's misrepresentations in applying for employment with [defendant] and with other previous and subsequent employers . . . places her credibility squarely at issue"; therefore, "prior (and subsequent) employment records, including her disciplinary history and reasons for leaving those employers, are highly relevant to impeach her, even if otherwise inadmissible under Rule 404(a) of the Federal Rules of Evidence."). The records Walmart seeks are thus relevant to its affirmative defense of failure to mitigate damages. And although Walsh has a privacy interest in her employment records, she has not argued or otherwise demonstrated that such concerns cannot be mitigated by the Protective Order in this action. Dkt. No. 14. Under these circumstances, the relevance of the prior and subsequent employment records that Walmart seeks outweighs the potential prejudice to Walsh. Given the broad nature of discovery, the lack of harm to Walsh, and the importance of her credibility in this action, the Court denies Walsh's motion.

Because the Court denies Walsh's motion on this basis, it need not reach Walmart's contentions that its subpoena to Walsh's former employer is relevant to the defense of after-acquired evidence. Dkt. No. 18 at 13. However, the Court notes that, contrary to Walsh's contentions, Dkt. No. 16 at 10, Dkt. No. 20 at 4, this defense can apply in cases alleging

constructive discharge. *See, e.g.*, *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1412 (9th Cir. 1996) (noting that "discovery of after-acquired evidence may bear upon the specific remedy to be ordered" in case where plaintiff alleged constructive discharge).

      3.   <u>The Subpoenas to Highline and Everett Public School Districts</u>

Walmart argues that records from the school districts are necessary to assess Walsh's credibility and her efforts to mitigate her damages because her misrepresentations about her background and employment history could affect her "general employability and job search efforts[.]" Dkt. No. 18 at 6; *see id.* at 10–12. For the same reasons set forth above, the Court denies Walsh's motion to protect her applications for employment, resumes, and certifications/degrees because those documents are relevant to her credibility and employability.

That leaves the issue of the relevance and discoverability of her work schedules and payroll/benefits information from the school districts. Information about Walsh's current work schedules, compensation, and benefits is relevant to her damages because she has a duty to mitigate those damages. *See, e.g.*, *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1497 (9th Cir. 1995); Dkt. No. 18 at 10–11.

Having found that the information is relevant, the Court "balances defendant's interest in obtaining the information against plaintiff's privacy interest and the burden to the third parties." *Abu*, 2009 WL 279036, at *3. As set forth above, notifying a current employer of the filing of a claim can "chill employees' willingness to pursue statutory claims and remedies for fear of adversely impacting future employment opportunities." *Bolding*, 2020 WL 3605593, at *2. But here, Walsh's declaration does not state that she has experienced or anticipates experiencing any resulting embarrassment or other negative consequences. *See generally* Dkt. No. 22. A general assertion of harm like Walsh makes in her motion "is not enough to demonstrate good cause" to issue a protective order. *Awosika*, 2011 WL 13048452, at *1 (explaining that "a party seeking

protection of her own employment records must assert how, specifically, she will be harmed by the discovery of those records.").

Walsh also argues that the subpoenas seek records about her current compensation that she has either already produced or will produce once she has them. Dkt. No. 16 at 12 (stating that she "has already provided Defendant with resumes, her rate of pay, her one and only substitute teaching job assignment through Highline Public School District, and emails related to her job assignment," and that she "has also committed to producing her paystubs once she receives them."); Dkt. No. 24 at 1–2. But she has already received one payment from a teaching assignment, *id.*, and does not state that she has produced that pay stub. Furthermore, Walmart is not required to trust that she will obtain and provide complete information, particularly when she has misrepresented her prior employment as set forth above. Although its lack of trust is premised in part on its belief that Walsh entirely fabricated her employment at Silver Lake Dental, it is also premised on other misrepresentations. Dkt. No. 18 at 6–7, 9. Regardless of whether those were intentional or careless, Walmart has reasonably lost faith in her and her ability to provide complete and accurate information. Dkt. No. 18 at 8 n.2; Dkt. No. 19 at 5. And employment records regarding her post-Walmart compensation are "better suited to provide [a] full picture" regarding benefits and lost earning capacity "than would any information provided by [the plaintiff]." *Awosika*, 2011 WL 13048452, at *2 (denying motion to quash subpoenas); *see also Mooney v. Roller Bearing Co. of Am. Inc.*, No. C20-1030-MJP, 2021 WL 5299140, at *3–4 (W.D. Wash. Nov. 15, 2021) (denying motion to quash subpoena to prior employer where employment records were relevant to damages, mitigation, and credibility, and plaintiff's privacy interests were lessened because he had put his employment records at issue in the case and they could be protected by the protective order). *But see Abu*, 2009 WL 279036, at *2 (granting protective order in part where plaintiff's compensation information could be obtained "through less intrusive

means, like tax records," and where the defendant already had information about plaintiff's compensation and had not shown that information about her benefits was relevant). Here, Walsh has refused to provide her tax records to verify her income—and tax records would not yet be available for the current year anyway—so records from her current employer and host school district "may be the only means to evaluate what Plaintiff has done to mitigate her damages." Dkt. No. 18 at 11; *see id.* at 3.[4] Therefore, the Court denies Walsh's motion for a protective order to protect records from the school districts.

### III.  CONCLUSION

For the reasons stated herein, the Court DENIES Walsh's motion for a protective order and to quash the subpoenas. Dkt. No. 16.

Dated this 8th day of May, 2023.

Lauren King
United States District Judge

---

[4] Walmart also hints at its need to obtain Walsh's tax records and "seeks the Court's approval to subpoena . . . Hilton Hotels," one of Walsh's prior employers, Dkt. No. 18 at 13; *see also id.* at 11 & n.5. In addition, Walmart asks for leave to assert an after-acquired evidence defense. *Id.* at 13 n.6. The Court does not address those issues because it does not provide affirmative relief requested in a response brief. *See, e.g.*, *Meghinasso v. Mercedes-Benz USA*, No. C17-5930-LK, 2022 WL 226078, at *1 (W.D. Wash. Jan. 26, 2022) ("[I]t is procedurally improper to include a request for affirmative relief in a response brief[.]"). For the same reason, the Court does not entertain Walsh's request—improperly asserted in her reply brief—that the Court "preclude Defendant from serving any further harassing subpoenas to Plaintiff's current and former employers or academic institutions absent application for leave from this Court to do so." Dkt. No. 20 at 4.